UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AmGUARD INSURANCE COMPANY,

                    Plaintiff,

vs.

COUNTRY PLAZA ASSOCIATES INC.
d/b/a COOL FISH RESTAURANT, TOM
SCHAUDEL, COOL FISH COMPANY, INC.
and MARK SCORDO,

                    Defendants.

**Docket No.: CV-13-5205 (JFB)**

ECF Case

---

**DEFENDANTS COUNTRY PLAZA ASSOCIATES INC. D/B/A COOL FISH RESTAURANT'S, TOM SCHADEL'S, AND COOL FISH COMPANY, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF THEIR CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ..................................................................................1

II. STATEMENT OF FACTS.........................................................................................1

III. ARGUMENT..............................................................................................................1

    A. Summary Judgment Should Only Be Granted When There Are No Issues of Material Fact ...................................................................................1

    B. AmGuard Has a Duty to Defend Because the Allegations in the Underlying Action Potentially Are Covered................................................2

    C. The Underlying Complaint Alleges "Bodily Injury" and "Personal and Advertising Injury".........................................................................................4

    D. The Employment-Related Practices Exclusion Is Inapplicable ..................6

    E. The Intentional Acts Exclusion Is Inapplicable............................................7

    F. The Policy Periods Cover the Underlying Action ........................................9

    G. Country Plaza Defendants' Cross-Motion for Partial Summary Judgment Should Be Granted ....................................................................10

IV. CONCLUSION ........................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Avondale Indus., Inc. v. Travelers Indem. Co.*,
887 F.2d 1200 (2d Cir. 1989) ...................................................................................3

*Critchlow v. First UNUM Life Ins. Co. of America*,
378 F.3d 246 (2d Cir. 2004) .....................................................................................4

*Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*,
91 N.Y.2d 169 (N.Y. 1997) .......................................................................................4

*Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.*,
19 F.3d 78 (2d Cir. 1994) .........................................................................................4

*Lavanant v. General Acc. Ins. Co.*,
164 A.D.2d 73 (N.Y. Sup. Ct. 1990) .........................................................................5

*MH Lipiner & Sons, Inc. v. Hanover Ins. Co.*,
869 F.2d 685 (2d Cir. 1989) .....................................................................................4

*Miller v. Cont'l Ins. Co.*,
40 N.Y.2d 675 (N.Y. 1976) ...................................................................................3, 4

*New York Cent. Mut. Fire Ins. Co. v. Wood*,
11 Misc. 3d 1059(A) (N.Y. Sup. Ct. 2006) ...............................................................8

*NWL Holdings, Inc. v. Discover Prop. & Cas. Ins. Co.*,
480 F. Supp. 2d 655 (E.D.N.Y 2007)...............................................................2, 3, 4

*Ruder & Finn v. Seaboard Sur. Co.*,
52 N.Y.2d 663 (N.Y. 1981) ........................................................................3, 5, 7, 9

*Schwamb v. Fireman's Ins. Co.*,
41 N.Y.2d 947 (N.Y. 1977) .......................................................................................3

*Tart v. Credit Suisse Asset Mgmt.*,
958 F. Supp. 788 (E.D.N.Y. 1997)...........................................................................5

*United States Underwriters Ins. Co. v. Kum Gang, Inc.*,
443 F.Supp. 2d 348 (E.D.N.Y. 2006)......................................................................4

*Utica Mut. Ins. Co. v. Cherry*,
38 N.Y.2d 735 (N.Y. 1975) .......................................................................................3

# TABLE OF AUTHORITIES
## (Cont'd)

Page(s)

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 ................................................................................................1

I.  **PRELIMINARY STATEMENT**

Defendants Country Plaza Associates Inc. d/b/a Cool Fish Restaurant, Tom Schaudel, and Cool Fish Company, Inc. (collectively, "Country Plaza Defendants") file this memorandum of law in opposition to Plaintiff AmGuard Insurance Company's ("AmGuard" or "Plaintiff") motion for summary judgment and in support of their cross-motion for partial summary judgment seeking an order declaring that AmGuard has a duty to defend Country Plaza Defendants in the action captioned *Mark Scordo v. Cool Fish, Country Plaza Associates, Inc., Tom Schaudel, and Cool Fish Co., Inc.*, No. 13 CV 4264, in the United States District Court for the Eastern District of New York ("Underlying Action"). For the reasons stated here, Country Plaza Defendants respectfully ask this Court to deny AmGuard's motion for summary judgment in its entirety and to grant their cross-motion for partial summary judgment in its entirety.

II. **STATEMENT OF FACTS**

Country Plaza Defendants respectfully refer the Court to the accompanying April 4, 2014 Local Civil Rule 56.1 Statement, the April 4, 2014 Declaration of Matthew F. Putorti, Esq., and the exhibit attached thereto, for the facts relevant to their opposition to AmGuard's motion for summary judgment and to their cross-motion for partial summary judgment.

III. **ARGUMENT**

    A.    Summary Judgment Should Only Be Granted When There Are No Issues of Material Fact

Summary judgment under Federal Rule of Civil Procedure 56 "is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the <u>absence of a genuine issue of material fact,</u>

and one party's entitlement to judgment as a matter of law." *NWL Holdings, Inc. v. Discover Prop. & Cas. Ins. Co.*, 480 F. Supp. 2d 655, 657 (E.D.N.Y 2007) (emphasis added). "No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inference and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movants favor." *Id.* Accordingly, AmGuard has the burden on its motion for summary judgment to demonstrate that there are no issues of triable fact—and, if there is any doubt as to any of those facts, those doubts must be resolved in favor of Country Plaza Defendants. As discussed, AmGuard cannot meet this burden and its motion for summary judgment should be denied.

    B.    AmGuard Has a Duty to Defend Because the Allegations in the Underlying Action Potentially Are Covered

The duty to defend is very broad and is intended to provide peace of mind to policyholders, such as Country Plaza Defendants, that may be sued, even upon frivolous grounds. In order to prevail in denying any duty to defend, AmGuard has the burden of establishing that no possibility of coverage exists after applying all of the facts, presumptions, and policy interpretations in the light most favorable to Country Plaza Defendants, its policyholder. Thus, an insurance company has a duty to defend when the allegations in an underlying complaint potentially or arguably trigger coverage under an insurance policy:

> An insurer's duty to defend and to indemnify are separate and distinct, and the former duty is broader than the latter. The duty to defend rests solely on whether the complaint in the underlying action contains <u>any allegations that arguably or potentially bring the action within the protection purchased</u>. So long as the claims alleged against the insured rationally may be said to fall within the policy coverage, the insurer must come forward and defend. New York courts

2

> have held, in addition, that an insurer seeking to avoid its
> duty to defend bears a heavy burden. "[B]efore an insurance
> company is permitted to avoid policy coverage, it must . . .
> establish[] that the exclusions or exemptions apply in the
> particular case, and that they are subject to <u>no other
> reasonable interpretation</u>." To avoid the duty therefore the
> insurer must demonstrate that the allegations in the
> underlying complaints are "solely and entirely" within specific
> and unambiguous exclusions from the policy's coverage.

*Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1204–05 (2d Cir. 1989) (emphasis added) (internal citations omitted); see also, e.g., *NWL Holdings, Inc.*, 480 F. Supp. 2d at 658 ("Under New York law, an insurance company's duty to defend is very broad: 'The duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer "has actual knowledge of facts establishing a reasonable possibility of coverage."' 'An insurer is relieved of the duty to defend only if "there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy."'"); *Ruder & Finn v. Seaboard Sur. Co.*, 52 N.Y.2d 663 (N.Y. 1981) ("It is a well-established legal principle that the duty of an insurer to defend is broader than its duty to pay. . . . If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be."); *Schwamb v. Fireman's Ins. Co.*, 41 N.Y.2d 947 (N.Y. 1977) ("So long as the claims, even though predicated on debatable or even untenable theory, may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend."); *Miller v. Cont'l Ins. Co.*, 40 N.Y.2d 675 (N.Y. 1976); *Utica Mut. Ins. Co. v. Cherry*, 38 N.Y.2d 735

3

(N.Y. 1975) (noting that "policies of insurance, drawn as they ordinarily are by the insurer, are to be liberally construed in favor of the insured").

An exclusion in the policy, by itself, does not absolve AmGuard of its duty to defend. Courts review exclusions as follows:

> It is well-settled that "exclusions from insurance policy coverage are given <u>strict construction</u>." Policy exclusions are interpreted in a manner <u>most beneficial to the insured</u>. The <u>insurer bears the burden</u> of proving that the exclusion applies, that it is stated in clear and unmistakable language, and is subject to no other reasonable interpretation.

*United States Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F.Supp. 2d 348, 356 (E.D.N.Y. 2006) (emphasis added) (internal citations omitted); *see also Critchlow v. First UNUM Life Ins. Co. of America*, 378 F.3d 246 (2d Cir. 2004); *Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.*, 19 F.3d 78, 81 (2d Cir. 1994); *MH Lipiner & Sons, Inc. v. Hanover Ins. Co.*, 869 F.2d 685, 687 (2d Cir. 1989); *Miller v. Cont'l Ins. Co.*, 40 N.Y.2d 675, 678 (N.Y. 1976) (noting that New York follows the "hornbook rule that policies of insurance . . . are to be liberally construed in favor of the insured").

Significantly, if an insurance company is found to have a duty to defend any singular claim against the policyholder, it must defend the entire action. *NWL Holdings, Inc.*, 480 F. Supp. 2d at 658 ("'If <u>any</u> of the claims against the insured arguably arise from the covered events, the insurer is required to defend the entire action'" (emphasis added) (quoting *Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (N.Y. 1997))).

C. The Underlying Complaint Alleges "Bodily Injury" and "Personal and Advertising Injury"

The AmGuard Policies obligate AmGuard to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . or

4

'personal and advertising injury.'" Putorti Dec., Exhs. A & B, Sec. II.A.1.a. AmGuard argues that the Underlying Action alleges neither "bodily injury" nor "personal and advertising injury." The Underlying Action, however, makes allegations that could potentially either be "bodily injury" or "personal and advertising injury," and, therefore, AmGuard has a duty to defend.

"Bodily injury" means "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Putorti Dec., Exhs. A & B, Sec. II.F.3. New York courts have held that "bodily injury," defined in the same way as in the AmGuard Policies, goes beyond physical harm and includes "emotional and psychological effects of incidents." *Lavanant v. Gen. Accident Ins. Co.*, 164 A.D.2d 73, 78–80 (N.Y. Sup. Ct. 1990). AmGuard summarily asserts that "there are no allegations of distress or any other type of 'bodily injury'" and relies upon one case that does not even include a discussion of "bodily injury." AmGuard's Memorandum of Law in Support of its Motion for Summary Judgment ("Pl. Memo.") at 5.

The Underlying Complaint alleges that Country Plaza Defendants are liable to Scordo for prima facie tort, of which "intentional infliction of harm" is an element. Putorti Dec., Exh. C, ¶¶ 35–36; *see also Tart v. Credit Suisse Asset Mgmt.*, 958 F. Supp. 788 (E.D.N.Y. 1997) (listing the elements, including "intentional infliction of harm," for prima facie tort). The harm alleged in the Underlying Action could potentially include emotional or psychological harm suffered as a result of the other allegations that Scordo makes, including the allegation that was he terminated from employment. *See, e.g., Ruder & Finn* 52 N.Y.2d at 670 ("[A] policy protects against poorly or incompletely pleaded cases as well as those artfully drafted."). Because emotional or psychological

5

harm is a type of "bodily injury," and the Underlying Action at a minimum potentially alleges such injury, AmGuard's duty to defend Country Plaza Defendants is triggered and AmGuard's motion for summary judgment must be dismissed.

Further, the Underlying Action also pleads "personal and advertising injury." "Personal and advertising injury" includes "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" and "oral or written publication, in any manner, of material that violates a person's right of privacy." Putorti Dec., Exhs. A & B, Sec. II.F.14(d), (e). The Underlying Action alleges both "slander" and "disparagement": "After being offered a comparable position at a competing restaurant, Defendant Schaudel telephoned [Scordo's] perspective employer and advised them not to hire [Scordo]. As a direct result of this telephone call, [Scordo's] offer of employment was rescinded." Putorti Dec., Exh. C, ¶ 28. Based on this allegation, the Underlying Action alleges "personal and advertising injury," for which the AmGuard Policies provide coverage and AmGuard has a duty to defend Country Plaza Defendants.

D.  The Employment-Related Practices Exclusion Is Inapplicable

AmGuard argues that the Employment-Related Practices Exclusion ("ERPE") bars coverage. The ERPE states that the AmGuard Policies do not apply to "bodily injury" or "personal and advertising injury" "arising out of any: (1) refusal to employ that person; (2) termination of that person's employment; or (3) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." Putorti Dec., Exhs. A & B, Employment-Related Practices Exclusion Endorsement. AmGuard incorrectly asserts that "[e]ach allegation in the Underlying

6

Action complaint arises out of the termination of Scordo's employment and Country Plaza and Schaudel's other employment-related practices concerning Scordo." Pl. Memo. at 6–7. AmGuard's argument has no merit.

For example, the Underlying Complaint alleges: "After being offered a comparable position at a competing restaurant, Defendant Schaudel telephoned [Scordo's] perspective employer and advised them not to hire [Scordo]. As a direct result of this telephone call, [Scordo's] offer of employment was rescinded." Putorti Dec., Exh. C, ¶ 28. Nothing in that allegation "arises out of" Country Plaza Defendants' (1) refusal to employ Scordo; (2) termination of Scordo's employment; or (3) employment-related practices. Schaudel allegedly telephoned Scordo's perspective employer after Scordo's employment had been terminated. There are no allegations that this telephone call was in any way connected to Scordo's employment. Schaudel's alleged actions were independent of and not connected to Scordo's former employment. See, e.g., Ruder & Finn 52 N.Y.2d at 670. Accordingly, the ERPE does not apply and AmGuard's motion for summary judgment should be denied.

E. The Intentional Acts Exclusion Is Inapplicable

AmGuard further argues that the "Intentional Acts Exclusions" also bar coverage. The AmGuard Policies state that they do not apply to "bodily injury" that is "expected or intended from the standpoint of the insured" and do not apply to "personal and advertising injury" that is "caused by or at the direction of or with the consent or acquiescence of the insured with knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" Polices at II.B.1.a and II.B.1.p(1). AmGuard asserts that these exclusions bar coverage because the

7

"Underlying Action is based solely on claims of intentional acts." Pl. MOL at 8. AmGuard is wrong.

That an allegation might involve an intentional act does not automatically mean that an intentional act exclusion is invoked. As a New York Court has adequately summarized:

> "Not every intentional act falls within the parameters of an insurance policy's intentional acts exclusion since insurable accidental results may flow from intentional causes." "In deciding whether a loss is the result of an accident, it must be determined, *from the point of view of the insured,* whether the loss was unexpected, unusual or unforeseen." "The critical question is whether the harm that resulted . . . could have been other than the harm intentionally caused within the meaning of the policy exclusion."
>
> * * *
>
> "[T]he intentional act exclusion [applies] if the injury [is] inherent in the nature of the wrongful act. An injury is held to be inherent in the nature of an act when the act is so exceptional that cause and effect cannot be separated; that to do the act is necessarily to do the harm which is its consequence; and that since unquestionably the act is intended, so also is the harm."

*New York Cent. Mut. Fire Ins. Co. v. Wood*, 11 Misc. 3d 1059(A) at *4–6 (N.Y. Sup. Ct. 2006) (citations omitted) (finding that the intentional act exclusion did not preclude coverage because "running over a tent with an automobile does *not* necessarily cause harm to another person").

Here, for example, the Underlying Action alleges that as a "direct result" of a telephone call that Schaudel made to Scordo's perspective employer, the perspective employer rescinded its offer of employment to Scordo. Putorti Dec., Exh. C, ¶ 28. This action, however, could be accidental (that is, not "intentional")—and thus outside the

8

bounds of the intentional acts exclusions—if the rescinding of Scordo's offer of employment was unexpected, unusual, or unforeseen. The record is devoid of information concerning the specifics of what Schaudel said on that phone call and from his perspective if the rescinding was unexpected, unusual, or unforeseen. See, e.g., Ruder & Finn 52 N.Y.2d at 670. Accordingly, at a minimum, issues of fact exist that preclude application of these intentional acts exclusions, and because the potential for coverage exists, AmGuard has a duty to defend. Furthermore, the telephone call could not necessarily result in the rescinding of Scordo's employment offer. AmGuard has not—and cannot—offer any evidence to suggest that the rescinding of the offer is the necessary consequence of the alleged phone call. Simply put, AmGuard has not and cannot demonstrate that at this stage of the Underlying Action that the evidence shows that its policyholder expected or intended the injuries alleged or had knowledge that the alleged acts would violate the underlying plaintiffs' rights.

F. The Policy Periods Cover the Underlying Action

AmGuard tacks on to its motion, without any clear explanation, a statement that "[a] portion of the alleged conduct took place outside of the AmGuard Policies' policy periods." This argument also has no merit. AmGuard admits that the AmGuard Policies were effective from September 25, 2011 through September 25, 2013. Pl. Memo. at 8. The latest allegation in the Underlying Action took place "within several weeks" after May 21, 2013, which is within the policy period. Putorti Dec., Exh. C, ¶¶ 24–25. Accordingly, because the allegations at a minimum potentially took place during the AmGuard policy periods, these allegations are enough to trigger AmGuard's duty to defend.

9

G.  Country Plaza Defendants' Cross-Motion for Partial Summary
    Judgment Should Be Granted

For all of the reasons stated above, AmGuard has a duty to defend Country Plaza Defendants in the Underlying Action because Country Plaza Defendants have demonstrated that the possibility of coverage exists under the AmGuard policies—a possibility that AmGuard has implicitly acknowledged by agreeing to pay for the defense pending this Court's decision.[1]

## IV.  CONCLUSION

For the reasons set forth here, this Court should deny AmGuard's motion for summary judgment in its entirety and grant Country Plaza Defendants' cross-motion for partial summary judgment in its entirety.

Dated:  New York, New York
        April 4, 2014

By: /s/ Matthew F. Putorti
Matthew F. Putorti, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, New York 10020
Telephone: 212-278-1000

*Attorneys for Defendants
Country Plaza Associates Inc. d/b/a
Cool Fish Restaurant, Tom Schaudel,
and Cool Fish Company, Inc.*

To: Yale Glazer (YG-1616)
    Marci Goldstein Kokalas (MG-1951)
    LAZARE POTTER & GIACOVAS LLP
    875 Third Avenue

---

[1] Despite agreeing to pay for Country Plaza Defendants' defense, AmGuard has breached that agreement by failing to make any payments. Putorti Dec., Exh. E. In this regard, Country Plaza Defendants also reserve all of their rights and shortly will seek to amend its counterclaims on that basis.

28th Floor
New York, New York 10022
Telephone: 212-758-9300

*Attorneys for Plaintiff*
*AmGuard Insurance Company*