AMGUARD INSURANCE COMPANY,

Plaintiff,

VERSUS

COUNTRY PLAZA ASSOCIATES INC. D/B/A COOL FISH RESTAURANT, TOM SCHAUDEL, COOL FISH COMPANY, INC., AND MARK SCORDO,

Defendants.

———————————

**MEMORANDUM AND ORDER**
July 3, 2014

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff AmGuard Insurance Company ("AmGuard" or "plaintiff") brings this action against Defendants Country Plaza Associates Inc. d/b/a Cool Fish Restaurant ("Country Plaza"), Cool Fish Company, Inc. ("Cool Fish"), and Tom Schaudel ("Schaudel") (collectively, "defendants"), seeking a declaratory judgment that it has no obligation to indemnify Country Plaza and Schaudel in connection with the underlying action commenced against them by their former employee, defendant Mark Scordo ("Scordo").[1] According to plaintiff, it has no duty to defend because Scordo's allegations in the Underlying Action do not state a claim for "bodily injury," "property damage," or "personal and advertising injury" within AmGuard's threshold insurance provisions, and the coverage otherwise is barred under the policy exclusions for employment-related practices and intentional conduct.

Plaintiff moves for summary judgment on this issue. Defendants oppose and cross-move for partial summary judgment, focusing on Scordo's cause of action for prima facie tort, which is based on an alleged telephone call from Schaudel to Scordo's prospective employer during which Schaudel allegedly told the employer not to hire Scordo.[2] Defendants contend that (1)

---

[1] The underlying action is entitled *Mark Scordo v. Cool Fish, Country Plaza Associates, Inc., Tom Schaudel, and Cool Fish Co., Inc.*, United States District Court, Eastern District of New York, Docket No. 13-CV-4264 (the "Underlying Action").

[2] As discussed *infra*, during oral argument, defense counsel conceded that the other causes of action in the Underlying Action—namely, willful failure to pay wages and overtime, retaliation (including retaliatory termination) based upon plaintiff's assertion of the wage and hour claims, and fraudulent concealment of wage and overtime violations in company records—are employment-related claims. In any event, even in the absence of such concession, the Court concludes that such claims are clearly

this cause of action falls under the "bodily injury" or "personal and advertising injury" prong; and (2) the exclusions do not apply, because the alleged tort does not "arise out of" any employment-related practices, and the evidence may show Schaudel did not act intentionally.

For the following reasons, the Court concludes that AmGuard has no duty to defend and, thus, grants AmGuard's motion for summary judgment and denies defendants' cross-motion for partial summary judgment. Specifically, the Court concludes that, even assuming *arguendo* that the prima facie tort cause of action falls within the "bodily injury" or "personal and advertising" coverage, the exclusions for employment-related practices and intentional acts plainly are applicable based on the allegations in Scordo's underlying complaint. Plaintiff has met its burden of demonstrating, based upon the clear allegations regarding the prima facie tort claim (as well as the other claims) in the underlying complaint, that (1) the claims are wholly within the exclusions, (2) the exclusions are subject to no other reasonable interpretation, and (3) there is no possible factual or legal basis upon which plaintiff insurer may eventually be held obligated to indemnify the insured under any policy provision. Accordingly, summary judgment is warranted in AmGuard's favor, and AmGuard is entitled to a declaration that is has no obligation to defend or indemnify Country Plaza and Schaudel in connection with the underlying action commenced by former employee Scordo.

I. BACKGROUND

A. Factual Background

The Court takes the following facts from the parties' affidavits, exhibits, and Rule 56.1 Statements of Fact. The Court construes the facts with respect to each motion in the light most favorable to the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). The parties' Rule 56.1 statements contain specific citations to the record, and the Court generally cites to the statements rather than to the underlying citations. Unless otherwise noted, where a Rule 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any contradictory evidence in the record.

1. The Insurance Policy

AmGuard issued insurance policies to defendants, which collectively provided coverage to defendants from September 25, 2011, to September 25, 2013 ("the AmGuard Policies").[3] (Def. 56.1 ¶¶ 1–2; *see* AmGuard Policies, Affirmation of Marci Kokalas ("Kokalas Aff.") Ex. A.)

The policies include a standard commercial general liability form that provides, in pertinent part, that AmGuard "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' or 'personal and advertising

---

employment-related claims that are subject to the Employment-Related Practices Exclusion, and defendants have failed to articulate any argument to the contrary. Thus, the Court's analysis in this Memorandum and Order focuses on the prima facie tort claim, because, if AmGuard has a duty to defend that claim, then it has a duty to defend the entire action. *See NWL Holdings, Inc. v. Discover Prop. & Cas. Ins. Co.*, 480 F. Supp. 2d 655, 658 (E.D.N.Y. 2007) ("'If any of the claims against the insured arguably arise from the covered events, the insurer is required to defend the entire action.'" (quoting *Frontier Insulation Contractors v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997))).

[3] The policies contain substantially the same language, provisions, exclusive, terms and conditions; any amended or added forms did not result in material changes. (Def. 56.1 ¶ 3.)

injury' to which this insurance applies," and will have the duty to defend "even if the allegations of the 'suit' are groundless, false, or fraudulent."[4] (Def. 56.1 ¶ 4.) The AmGuard Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* ¶ 5.) The AmGuard Policies define "personal and advertising injury" to include "injury, including consequential 'bodily injury' arising out" offenses including, as relevant here, "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." (*Id.* ¶ 6.)

The AmGuard Policies contain an Employment-Related Practices Exclusion ("ERPE"). It states, in pertinent part, that the insurance does not apply to "bodily injury" or "personal and advertising injury" to a person "arising out of any" (1) refusal to employ that person; (2) termination of that person's employment; or (3) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person. (*Id.* ¶ 7.) The exclusion applies whether the insured may be liable as an employer or in any other capacity. (*Id.*)

The AmGuard Policies also exclude coverage for "Expected or Intended Injury" (the "Intentional Act Exclusions"). Specifically, the insurance does not apply to "bodily injury" if it "was expected or intended from the standpoint of any insured." (*Id.* ¶ 8.) It also does not apply to "personal and advertising injury" if it was "caused by or at the direction of or with the consent or acquiescence of any insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" (*Id.*)

### 2. The Underlying Action

In July 2013, Scordo sued defendants in the United States District Court for the Eastern District of New York, alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law for willful failure to pay wages and overtime, retaliatory termination, fraud, and prima facie tort. (Def. 56.1 ¶ 10; *see* Underlying Action Complaint, Kokalas Aff. Ex. C.)

Scordo was employed by Country Plaza and Schaudel as a bartender from July 2000 until around July 2013, and he claims defendants fraudulently concealed his overtime hours to avoid paying overtime. (*See* Underlying Action Complaint ¶¶ 10–28.) Scordo also alleges that, after his attorney wrote to defendants regarding the wage and hour claims, defendants removed plaintiff from the weekend shifts and ultimately terminated him. (*Id.* ¶¶ 23–36[5].) In addition, he claims that, "[a]fter [he was] offered a comparable position at a competing restaurant, Defendant Schaudel telephoned Plaintiff's [prospective] employer and advised them not to hire Plaintiff. As a direct result of this telephone call, Plaintiff's offer of employment was rescinded." (*Id.* ¶ 28.) Scordo alleges that defendants are liable to him for prima facie tort because their calling the prospective employer to dissuade it from hiring Scordo "constitutes the (a) intentional infliction of harm, (b) resulting in special damages, (c) without excuse or justification, (4) by an act or series of acts which are otherwise unlawful." (*Id.* ¶ 35.) In addition to the damages he seeks for the other claims,

---

[4] Property damage is not at issue in this litigation.

[5] The Underlying Action Complaint is not numbered correctly. These allegations appear on page 5.

plaintiff seeks at least $50,000 in damages for the prima facie tort claim.

On or about August 13, 2013, defendants asked AmGuard to defend and indemnify them in connection with the Underlying Action. (Def. 56.1 ¶ 18.) By letter dated September 5, 2013, AmGuard disclaimed coverage because (1) the complaint did not allege the requisite injury as defined by AmGuard's policy (*id.* ¶ 19); and (2) the allegations arise out of the termination of Scordo's employment and/or defendants' other employment-related practices concerning Scordo, and also fall under the intentional acts exclusion (*id.* ¶¶ 22–23). In the disclaimer, AmGuard offered defendants a courtesy defense pending judicial confirmation of the propriety of AmGuard's declination of coverage. (*Id.* ¶ 25.)

### B. Procedural Background

Scordo filed the Underlying Action on July 29, 2013. AmGuard filed this action on September 18, 2013. Defendants answered and asserted a counterclaim on December 20, 2013, which AmGuard answered on January 9, 2014. AmGuard filed the instant motion for summary judgment on March 5, 2014. Defendants opposed and cross-moved for partial summary judgment on April 4, 2014. AmGuard replied on April 18, 2014. The Court held oral argument on May 20, 2014. The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations

omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. DISCUSSION

AmGuard argues that it has no duty to defend the Underlying Action because Scordo's complaint does not give rise to a claim within the AmGuard Policies' insurance provisions, and, even if the Underlying Action triggers the insuring provisions, the policy exclusions bar defendants' coverage claim. As noted *supra*, the Court focuses on the prima facie tort claim because defendants conceded, at oral argument, that the other causes of action—namely, willful failure to pay wages and overtime, retaliation (including termination) based upon plaintiff's assertion of the wage and hour claims, and fraudulent concealment of wage and overtime violations in company records—are employment-related claims.[6] In any event, even in the absence of that concession, it is evident that the other causes of action fall within both exclusions. Each of those causes of action relate to employment-related practices—wages and overtime practices, retaliation (including retaliatory termination and interference with prospective employment), and maintaining false business records—for which the Employment-Related Practices Exclusion unambiguously bars coverage. Such causes of action, both by their inherent nature as well as by the allegations in the Underlying Action Complaint, clearly involve intentional acts for which the Intentional Acts Exclusion also unambiguously bar coverage.

As set forth below in more detail, with respect to the other cause of action for prima facie tort, the Court also concludes that AmGuard has no duty to defend because the exclusions unambiguously bars any coverage for such claim.[7]

### A. Duty to Defend

Under New York law, an insurer has an "exceedingly broad" duty to defend the insured. *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006) (citation and internal quotation marks omitted). The duty

---

[6] *See* Oral Arg. Recording ("COURT: Isn't it beyond dispute that those other claims are employment-related claims? DEFENDANTS' COUNSEL: Yes.").

[7] With respect to whether Scordo has stated a claim for "bodily injury" or "personal and advertising harm," defendants argue (1) although Scordo does not allege emotional or psychological harm in the Underlying Action, Scordo's claim does not explicitly exclude the possibility that the harm alleged in the prima facie tort claim potentially includes emotional or psychological harm suffered as a result of defendants' alleged conduct; and (2) the telephone call-related claim could state a cause of action for "slander" and "disparagement." Plaintiff counters that the prima facie tort label is given to an action arising out of the intentional infliction of economic harm without justification. The Court, however, need not decide whether the Underlying Action actually triggered the coverage provision on the prima facie tort claim (or any other claim), because, as explained in this Memorandum and Order, the exclusions unambiguously apply in any event to all the claims in the Underlying Action.

5

to defend is broader than the duty to indemnify. *See Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984) ("Where an insurance policy includes the insurer's promise to defend the insured against specified claims as well as to indemnify for actual liability, the insurer's duty to furnish a defense is broader than its obligation to indemnify."); *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991) ("[A]n insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage.").

"[A]n insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage." *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137 (alteration, citation, and internal quotation marks omitted); *see also Fitzpatrick*, 78 N.Y.2d at 65 ("This Court has repeatedly held that an insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy."). An insurer has a duty to defend a claim against its policy holder unless it can "establish, as a matter of law, that there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify [the insured] under any provision contained in the policy." *Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 64 N.Y.2d 846, 848 (1985). An insurer who seeks to be relieved of the duty to defend based on a policy exclusion "bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Frontier Insulation Contractors*, 91 N.Y.2d at 175; *see also Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121 (2d Cir. 2012). Further, "[i]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *Frontier Insulation Contractors*, 91 N.Y.2d at 175.

"Insurance policies are contracts to which the ordinary rules of contractual interpretation apply." *Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F. Supp. 2d 381, 386 (S.D.N.Y. 2008). New York insurance contracts are construed in light of "common speech." *Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398 (1983); *see also Ment Bros. Iron Works*, 702 F.3d at 122 ("Terms in an insurance contract must be given their plain and ordinary meaning." (citation and internal quotation marks omitted)). Insurance contracts also must be interpreted "according to the reasonable expectations and purpose of the ordinary businessman when making an ordinary business contract." *Gen. Motors Acceptance Corp. v. Nationwide Ins. Co.*, 4 N.Y.3d 451, 457 (2005) (internal citations and quotation marks omitted). Ambiguous terms in a policy "must be construed in favor of the insured and against the insurer." *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007).

B.  Application

AmGuard argues that both exclusions apply because (1) Scordo's allegation that Schaudel interfered with Scordo's prospective employment by telephoning his new employer and advising it not to hire him arises out of his termination and defendants' employment-related practices; and (2) the Underlying Action is based solely on claims of intentional acts. Defendant counters that (1) nothing in the prima facie tort allegation

6

"arises out of" employment-related practices, because Schaudel called the employer after terminating Scordo and "[t]here are no allegations that this telephone call was in any way connected to Scordo's employment"; and (2) the evidence could ultimately show that the rescinding of Scordo's offer of employment was unexpected, unusual, or unforeseen, and therefore not intentional on Schaudel's part. (Opp'n, at 6–9.) In essence, defendants argue that plaintiff must wait until discovery (and, potentially, through trial) before being absolved, if at all, of its duty to defend. As set forth below, none of defendants' arguments has merit.

1. ERPE

The AmGuard Policies exclude coverage of "bodily injury" and "personal and advertising injury" "arising out of" any refusal to employ, termination, or employment-related practices such as defamation. Under New York law, the term "arising out of" in general liability insurance contracts is quite broad; courts in New York generally understand the words "arising out of" to mean "originating from, incident to, or having connection with." *Liberty Mut. Fire Ins. Co. v. E.E. Cruz & Co., Inc.*, 475 F. Supp. 2d 400, 409 (S.D.N.Y. 2007) (citing cases); *see also Maroney v. N.Y. Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472 (2005) ("As used in a homeowners liability policy's automobile exclusion clause, the words 'arising out of' have broader significance and are ordinarily understood to mean originating from, incident to, or having connection with. We conclude that, in the uninsured premises realm, the phrase 'arising out of' similarly requires only that there be some causal relationship between the injury and the risk for which coverage is provided." (internal citations, quotation marks, and alterations omitted)).

Schaudel's alleged conduct followed plaintiff's termination and the disputes over unpaid wages. Scordo claims Schaudel, in retaliation for Scordo's attempt to protect his employment rights, explicitly told the prospective employer not to hire him. In particular, Scordo alleges: "Following his termination, Plaintiff sought employment at other local restaurants as a bartender. After being offered a comparable position at a competing restaurant, Defendant Schaudel telephoned Plaintiff's prospective employer and advised them not to hire Plaintiff. As a direct result of this telephone call, Plaintiff's offer of employment was rescinded." (Underlying Action Complaint ¶¶ 27–29.) That alleged conduct is the sole basis of the prima facie tort claim. (*See* Underlying Action Complaint ¶¶ 35–36 ("Defendants, by calling Plaintiff's prospective employer to dissuade them from hiring plaintiff constitutes the (a) intentional infliction of harm, (b) resulting in special damages, (c) without excuse or justification, (4) by an act or series of acts which are otherwise lawful. Accordingly, Defendants are liable to Plaintiff for Prima Facie Tort.").) Thus, the Court concludes that the statements to the prospective employer alleged as the sole basis for the prima facie tort claim are "incident to" and have "some causal relationship" to defendants' excluded employment-related practices, such as evaluations and defamation. In other words, such alleged conduct arose directly from, and could not have occurred but for, Scordo's employment. Thus, the claim unambiguously falls within the Employment-Related Practices Exclusion.

In *Berman v. General Accident Insurance Company of America*, 671 N.Y.S.2d 619 (N.Y. Sup. Ct. 1998), the court reached the exact same conclusion under closely analogous circumstances. In particular, the claim at issue in that case involved alleged comments by an employer

about an employee to a client and defamatory statements made by the employer at a staff meeting a day after the employee was discharged. *Id*. at 622. The plaintiffs asserted that the employment-related practices exclusion did not apply because (1) the statements did not reflect a genuine assessment of the employee's performance, but rather were an attempt to disparage; and (2) the statements were made after the employee had been discharged. *Id*. at 622–23. The court rejected both arguments and held that the exclusion applied. In particular, the court explained:

> Irrespective of [the employer's] motive for mildly criticizing [the employee] in statements he made to the staff and to a patient, those statements constituted an assessment of [the employee's] performance as an employee of the clinic and an explanation of why she was discharged. As, such, these statements fall squarely within the policy exclusion for specified employment-related practices such as evaluation and defamation.

*Id*. at 623. In reaching this decision, the court rejected the argument that the statements were not employment-related because they occurred after termination:

> Even though the statements were made after [the employee] was discharged, they were nonetheless clearly "employment-related." The plaintiffs' argument that the exclusionary language in the policy must be read as limited to injuries sustained while the employee is still employed is "semantically unreasonable and unacceptable."

*Id*. (citation omitted); *see also Brooklyn Law Sch. v. Aetna Cas. & Sur. Co.*, 661 F. Supp. 445, 452 (E.D.N.Y. 1987) (explaining that, under New York law, "[a]ny communication, spoken or written, concerning an individual which tends to expose him to public contempt, ridicule, or disgrace, or injure him in his profession is defamatory"; and concluding, among other things, that defendant carrier had no duty to defend lawsuit because plaintiff had failed to state a claim for defamation, which was harm covered by the policy but subject to exclusions), *aff'd*, 849 F.2d 788 (2d Cir. 1988).

In sum, because the claims in the Underlying Action arise out of Scordo's employment and defendants' employment-related practices, the ERPE applies and AmGuard has no duty to defend.

### 2. Intentional Acts

At oral argument, counsel for defendants conceded that the underlying causes of action require intentional conduct,[8] but argued that the Intentional Acts Exclusion does not apply with respect to the prima facie tort claim because the evidence may show that Schaudel did not intend to interfere with Scordo's prospective employment, or that the rescission of the offer was an unexpected, unusual, or unforeseen consequence.

The Intentional Acts Exclusion clearly applies to Scordo's allegations. In determining whether the allegations fall within such an exclusion, the Court must look at the facts alleged. *See, e.g.*, *Fitzpatrick*, 78 N.Y.2d at 65 ("This Court has repeatedly held that an insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy.");

---

[8] *See* Oral Arg. Recording ("COURT: Do any of them [*i.e.*, the causes of action in the underlying complaint] not require intent? DEFENDANTS' COUNSEL: None of which I am aware.").

*Brooklyn Law Sch.*, 849 F.2d at 789 ("A complaint that the insured has conspired to commit certain acts necessarily charges intentional conduct on the part of the defendant-insured. It is that conduct which must be examined to determine whether the plaintiff alleges that the insured intended to cause damage or that the damage was unexpected, unusual, and unforeseen." (internal citation and quotation marks omitted)). Thus, an insurer cannot be required to defend against an action that otherwise falls under an intentional acts exclusion simply because discovery might uncover other causes or a rational jury might find otherwise. *See Willard v. Preferred Mut. Ins. Co.*, 662 N.Y.S.2d 342, 343 (N.Y. App. Div. 1997) ("In determining whether a policy exclusion applies, the facts alleged in the complaint, rather than the conclusory assertions found therein, are controlling."); *Atl. Mut. Ins. Co. v. Terk Techs. Corp.*, 763 N.Y.S.2d 56, 64 (N.Y. App. Div. 2003) (noting that courts have found no duty to defend in cases involving intentional conduct even where complaint in underlying action contained allegations of negligence, and reasoning that, "notwithstanding the fact that a violation of the [pleaded statute] can be unintentional, and that the [underlying] complaint . . . asserts that [the insured] acted with 'reckless disregard,' we can discern no justification from the factual allegations set forth in the complaint . . . to impose a duty to defend . . . [s]ince all of the factual allegations of the complaint are premised on intentional, 'knowing' conduct").

Scordo only alleges intentional conduct. He specifically claims that Schaudel called the prospective employer "to dissuade them from hiring [Scordo]," which "constitutes . . . intentional infliction of harm." (Underlying Action Complaint ¶ 35.) Nothing in his complaint suggests that defendants acted in anything less than an intentional manner with respect to this call and the other employment-related claims. In fact, Scordo cannot even establish a prima facie tort unless he demonstrates that defendants acted with malice.[9] *See Wiggins & Kopko, LLP v. Masson*, 983 N.Y.S.2d 665, 667 (N.Y. App. Div. 2014) (citations omitted).

The Court also is unpersuaded by the argument that the duty to defend applies because the consequence of Schaudel's action could have been unexpected, unusual or unforeseen and, thus, unintended. As plaintiff notes, the alleged injury—the offer rescission—is one in the same with the alleged conduct—the call advising the employer not to hire Scordo. Thus, the expected injury is inherent in the alleged intentional act because it is its direct and natural consequence. *See Mary & Alice Ford Nursing Home Co., Inc. v. Fireman's Ins. Co. of Newark, N.J.*, 446 N.Y.S.2d 599, 601 (N.Y. App. Div. 1982) (finding no duty to defend wrongful termination suit because damages alleged in complaint for mental and emotional injuries as a result of discharge from employment, because alleged injuries were direct and natural consequence of plaintiff's intentional act, unlike case "where the insured intentionally injected heroin into his arm but the overdose and resulting death were unintentional"). In fact, the Underlying Action Complaint does not allege that the rescission was unexpected; rather, it alleges that the call was made to the prospective employer specifically "to dissuade them from hiring plaintiff." (Underlying Action Complaint ¶ 35.)

Accordingly, because the claims in the Underlying Action clearly involve only allegations of intentional conduct, the

---

[9] Defendants' counsel conceded this point at oral argument. *See* Oral Arg. Recording ("COURT: Prima facie tort requires intent, require malice. Right? DEFENDANTS' COUNSEL: Correct. Yes, Your Honor.").

9

Intentional Acts Exclusion squarely applies, and AmGuard has no duty to defend. *See First Fin. Ins. Co. v. XLNT Recovery Specialist, Inc.*, 98 Civ. 5033(DAB)(JCF), 2000 WL 943499, at *4 (S.D.N.Y. July 7, 2000) (finding no duty to defend based on exclusion for intentional acts because plaintiffs in underlying case claimed that defendant's employees acted with intent to injure and committed, among other things, prima facie tort).

## IV. CONCLUSION

For the foregoing reasons, the Court grants AmGuard's motion for summary judgment on its claim for declaration of non-coverage, and denies defendants' cross-motion for summary judgment. AmGuard has no duty to defend or indemnify in connection with the Underlying Action commenced by Scordo. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:   July 3, 2014
         Central Islip, NY

\*\*\*

Plaintiff is represented by Marci Goldstein Kokalas, Stephen M. Lazare, and Yale Howard Glazer, of Lazare Potter & Giacovas LLP, 875 Third Avenue, 28th Floor, New York, NY 10022. Defendants are represented by Matthew Francis Putorti of Anderson Kill P.C., 1251 Avenue of the Americas, New York, NY 10020.